UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN KORSAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 20-3580 (TNM) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
Facsimile: (202) 252-2599
paul.cirino@usdoj.gov

*Counsel for Defendant*

Dated:  May 30, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

INTRODUCTION .....................................................................................................1

FACTUAL BACKGROUND ......................................................................................2

I.      PLAINTIFF AND MR. EBAI SPEND THE EVENING AT A MUSIC CLUB
        IN WASHINGTON. ......................................................................................2

II.     OFFICER WOOD-THOMAS WITNESSES MR. EBAI COMMIT TRAFFIC
        VIOLATIONS AND ATTEMPTS TO MAKE A TRAFFIC STOP, BUT
        MR. EBAI DOES NOT PULL OVER. ..............................................................4

III.    MR. EBAI ATTEMPTS TO FLEE FROM OFFICER WOOD-THOMAS,
        ENTERS THE INTERSTATE, DRIVING AGAINST ONCOMING TRAFFIC,
        AND COLLIDES WITH AN ONCOMING VEHICLE. ....................................5

PROCEDURAL HISTORY .......................................................................................8

APPLICABLE LEGAL STANDARD ........................................................................9

THE FEDERAL TORT CLAIMS ACT ...................................................................11

ARGUMENT ..........................................................................................................12

I.      THE DISCRETIONARY FUNCTION EXCEPTION APPLIES TO
        THE CONDUCT OF OFFICER WOOD-THOMAS .......................................12

        A.      The Court's Ruling on Defendant's Motion to Dismiss ........................13

        B.      The Secret Service's Vehicular Pursuit Policy Applies to Officer
                Wood-Thomas' Actions. ......................................................................14

                1.      Relevant Policy Provisions ........................................................14

                2.      Felonies Applicable to the Vehicular Pursuit of Mr. Ebai...............16

                3.      The Officer Initiated a Vehicular Pursuit Only After Mr. Ebai Ignored a
                        Signal to Stop and Recklessly Attempted to Elude the Officer. .......16

                4.      Plaintiff's Affidavit is Inadmissible Because He Lacks Foundation to
                        Address the Sequence of Events. ...............................................18

        C.      Officer Wood-Thomas's Conduct Involved an Element of
                Judgment and Choice .........................................................................21

        D.      Officer Wood-Thomas's Conduct Involved the Type of Judgment That the
                Discretionary Function Exception Was Enacted to Shield from Liability .............24

II.     DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT
        TO PLAINTIFF'S NEGLIGENCE CLAIM. ................................................................ 25

        A.    Plaintiff Mischaracterizes the Applicable Secret Service Policy and
              Misapplies It to the Undisputed Admissible Evidence. ............................ 26

        B.    Plaintiff's Theory That Officer Wood-Thomas Could Have "Ticketed"
              Mr. Ebai "Another Way" Is Speculative and Illogical. ........................... 27

        C.    Plaintiff's Theory Based on Officer Wood-Thomas' Radio Calls Is
              Speculative and Illogical. ........................................................................ 28

III.    OFFICER WOOD-THOMAS' ACTIONS PREVENTED MORE SERIOUS
        PERSONAL INJURY. .................................................................................... 29

CONCLUSION ............................................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Akridge v. Gallaudet Univ.*,
   729 F. Supp. 2d 172 (D.D.C. 2010) ...................................................................... 20

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................... 9, 10

*Berkovitz v. United States*,
   486 U.S. 531 (1988) .............................................................................. 12, 21, 24

*Bonieskie v. Mukasey*,
   540 F. Supp. 2d 190 (D.D.C. 2008) ...................................................................... 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................... 9, 10

*Colombe v. United States*,
   Civ. A. No. 16-5094, 2019 WL 7629237 (D.S.D. July 30, 2019),
   *report and recommendation adopted*, 2019 WL 7628982 (D.S.D. Oct. 21, 2019) .... 21, 22-23

*Cope v. Scott*,
   45 F.3d 445 (D.C. Cir. 1995) ......................................................................... 11, 12

*Crenshaw v. Georgetown Univ.*,
   23 F. Supp. 2d 11 (D.D.C. 1998) ........................................................................ 20

*David v. District of Columbia*,
   246 F. Supp. 3d 647 (D.D.C. 2017) ...................................................................... 10

*Diamond v. Atwood*,
   43 F.3d 1538 (D.C. Cir. 1995) ............................................................................ 9

*District of Columbia v. Beretta, U.S.A., Corp.*,
   847 A.2d 1127 (D.C. 2004) ............................................................................... 11

*Federal Deposit Ins. Corp. v. Meyer*,
   510 U.S. 471 (1994) ....................................................................................... 11

*Gallegos Reyes v. United States*,
   Civ. A. No. 19-0902, 2020 WL 248688 (W.D. Tex. Jan. 15, 2020) ................................ 21, 25

*Gen. Elec. Co. v. Jackson*,
   595 F.Supp.2d 8 (D.D.C.2009) ........................................................................... 20

*Herrera v. United States*,
   Civ. A. No. 09-0756, 2010 WL 4236974 (S.D. Cal. Oct. 21, 2010) ................................ 21, 25

*Honda v. Clark*,
   386 U.S. 484 (1967) ........................................................................................ 11

*Horta v. Sullivan*,
   4 F.3d 2 (1st Cir. 1993) ............................................................................ 21, 25

*Hurtado v. United States*,
   Civ. A. No. 94-2483, 1996 WL 65115 (S.D. Tex. Feb. 8, 1996) ........................... 25

*Kuhlman v. United States*,
   822 F. Supp. 2d 1255 (M.D. Fla. 2011) ................................................... 21-22

*Lindsey v. Rice*,
   524 F. Supp. 2d 55 (D.D.C. 2007) ...................................................................... 10

*Loughlin v. United States*,
   393 F.3d 155 (D.C. Cir. 2004) .......................................................................... 12

*Loumiet v. United States*,
   828 F.3d 935 (D.C. Cir. 2016) .......................................................................... 12

*Many v. United States*,
   Civ. A. No. 15-3004, 2017 WL 2937596 (D.S.D. July 7, 2017) .............. 21, 22, 25

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................ 10

*Novak v. Capital Mgmt. & Dev. Corp.*,
   452 F.3d 902 (D.C. Cir. 2006) .......................................................................... 11

*Potter v. District of Columbia*,
   558 F.3d 542 (D.C. Cir. 2009) .......................................................................... 10

*Richards v. United States*,
   369 U.S. 1 (1962) ............................................................................................ 11

*Stearney v. United States*,
   Civ. A. No. 16-8060, 2018 WL 4407555 (D. Ariz. Sept. 17, 2018) .............. 21, 25

*United States v. Gaubert*,
   499 U.S. 315 (1991) .................................................................................... 12, 21

*United States v. Testan*,
   424 U.S. 392 (1976) ........................................................................................ 11

*Williams v. United States*,
   314 F. App'x 253 (11th Cir. 2009) .................................................................... 21

**Federal Statutes**

28 U.S.C. § 1346(b) ................................................................................. 11

28 U.S.C. § 2679(a) ................................................................................. 11

28 U.S.C. § 2680 ....................................................................................... 8

**District of Columbia Statutes**

D.C. Code § 50-2201.04(b) ...................................................................... 16

D.C. Code § 50-2201.04(b-1) ................................................................... 16

D.C. Code § 50-2201.05b .................................................................... 13, 16

D.C. Code § 50-2201.05b(b)(1) ................................................................ 13

D.C. Code § 50-2201.05b(b)(2) ..................................................... 13, 16, 26

**Rules**

Fed. R. Civ. P. 12(h)(3) ............................................................................ 13

Fed. R. Civ. P. 56 ....................................................................................... 2

Fed. R. Civ. P. 56(a) .................................................................................. 9

Fed. R. Civ. P. 56(c)(4) ....................................................................... 18, 20

Fed. R. Civ. P. 56(e) .................................................................................. 9

Fed. R. Evid. 602 ...................................................................................... 18

Defendant United States of America respectfully submits this Memorandum of Law in Support of Defendant's Motion for Summary Judgment.  For the reasons set forth below, the Court should grant this motion and grant summary judgment in Defendant's favor with respect to Plaintiff's claim under the Federal Tort Claims Act ("FTCA").

## INTRODUCTION

This case involves Plaintiff's allegations that Officer Clayton Wood-Thomas, an Officer with the Uniformed Division of the United States Secret Service, acted negligently and caused Plaintiff's injuries on July 8, 2018.  Plaintiff suffered the injuries when Victor O. Ebai, who was driving the vehicle in which Plaintiff was a passenger, headed the wrong way on Interstate 66 and crashed into an oncoming vehicle.

Now with the benefit of discovery, the Court should revisit the issue of subject matter jurisdiction.  The FTCA's discretionary function exception applies to Officer Wood-Thomas' conduct because his decision to pursue the fleeing vehicle in which Plaintiff was a passenger (1) involved an element of judgment and choice and (2) reflected judgment of the kind that the discretionary function exception was designed to shield.  In addition, discovery has demonstrated that Plaintiff's previously submitted affidavit—which the Court had found created a disputed fact—was not based on personal knowledge and is therefore inadmissible to oppose a motion for summary judgment.

Even if the Court were to conclude that the discretionary function exception does not apply to the officer's actions, it should grant summary judgment in the United States' favor because Plaintiff has not identified a plausible theory for negligence.  Plaintiff alleges that Officer Wood-Thomas did not follow the agency's vehicular pursuit policy, but the undisputed facts demonstrate that the officer began his "pursuit" only after Mr. Ebai attempted to evade the

officer and drove recklessly—a felony in District of Columbia.  Plaintiff's other theories for

negligence are meritless because they are based on the speculative and illogical theories that

(1) unidentified Secret Service officials did not adequately respond to Officer Wood-Thomas'

radio transmissions and (2) the officer should have allowed Mr. Ebai to escape and that another

officer should have gone to his home later to ticket him for the traffic violations.  Plaintiff has

not advanced any plausible theory for negligence.

For these reasons, as explained more fully below, there is no evidence-based theory for

negligence in this case.  Officer Wood-Thomas acted reasonably and consistent with agency

policy in all respects on July 8, 2018.  The United States is entitled to summary judgment.

## FACTUAL BACKGROUND

This motion seeks summary judgment with respect to the FTCA claim alleged in the

Amended Complaint.  The following factual narrative is based on Plaintiff's deposition

testimony and responses to interrogatories, supplemented by additional facts that are

undisputed.[1]

## I.    PLAINTIFF AND MR. EBAI SPEND THE EVENING AT A MUSIC CLUB IN WASHINGTON.

In July 2018, Plaintiff was employed as an unarmed security guard at "data centers" in

the area.  Pl. Dep.[2] at 20-22.  On the evening of July 7, 2018, he met with his good friend, Mr.

Ebai, at Mr. Ebai's apartment in Vienna, Virginia, before traveling to Washington, D.C., to visit

a music club.  *Id.* at 33-34.  The two men listened to music and chatted in the apartment and then

---

[1]    If this case proceeds to trial, Defendant reserves its right to contest certain facts set forth
in this section and in Defendant's Statement of Undisputed Facts.  In this motion, Defendant
presents the facts in the light most favorable to Plaintiff to assist the Court with the disposition of
this motion under the framework of Federal Rule of Civil Procedure 56.

[2]    Citations to "Pl. Dep." refer to the transcript of the Videoconference Deposition of
Jonathan Korsah, taken on January 24, 2022.  Relevant excerpts are attached hereto as Exhibit A.

traveled to Washington in Mr. Ebai's red Chevrolet Sonic, with Mr. Ebai at the wheel.  *Id.* at 34-35; Pl.'s Interrog. Resps.[3] (Response to No. 8).  Although Plaintiff does not recall the name of the music club or the part of Washington in which it was located, Mr. Ebai recalled that the establishment was named Madhatter and was in the Adams Morgan neighborhood.  Pl. Dep. at 35-36; Ebai Dep.[4] at 14. According to Mr. Ebai, the two arrived at the club close to Midnight. Ebai Dep. at 14.

At Madhatter, Plaintiff was dancing alone and drinking alcohol—"probably" two mixed drinks—although he was "not sure" about the names of the drinks or how many he consumed. Pl. Dep. at 36-37.  At the same time, Mr. Ebai was dancing and mingling with women but did not consume alcohol or drugs.  *Id.* at 38; Ebai Dep. at 14, 18-19.  Both men stayed at Madhatter until 3:00 a.m., when the club closed.  Pl. Dep. at 38; Ebai Dep. at 15.  They remained outside the club for approximately another 30 to 60 minutes while Mr. Ebai was socializing with women.  Pl. Dep. at 39; Ebai Dep. at 15-16.

At approximately 3:30 or 4:00 a.m., both men returned to Mr. Ebai's car to drive back to Plaintiff's residence in Virginia, with Mr. Ebai driving and Plaintiff in the passenger seat.  Pl. Dep. at 39; Ebai Dep. at 16-17.  Because Mr. Ebai was unfamiliar with the District of Columbia, he used an application on his phone to provide directions as he drove back to Virginia.  Pl. Dep. at 40; Ebai Dep. at 18.

---

[3]     Citations to "Pl. Interrog. Resps." refer to Plaintiff's Answers to Defendant's Interrogatories and Request for Production of Documents, dated October 14, 2021.  As the document does not have page numbers, the United States will refer to the response to the numbered interrogatory.  Relevant excerpts are attached hereto as Exhibit B.

[4]     Citations to "Ebai Dep." refer to the transcript of the Deposition of Victor O. Ebai, taken on January 14, 2022.  Relevant excerpts are attached hereto as Exhibit C.

## II. OFFICER WOOD-THOMAS WITNESSES MR. EBAI COMMIT TRAFFIC VIOLATIONS AND ATTEMPTS TO MAKE A TRAFFIC STOP, BUT MR. EBAI DOES NOT PULL OVER.

Mr. Ebai had procured telephone numbers of some women with whom he had mingled outside Madhatter and was texting them while he was driving and was "distracted." Ebai Dep. at 19. He tried to make a left turn and realized he was going the wrong way, so he tried to reverse, but the cars behind him had moved up, causing Mr. Ebai "to be stuck in the middle of the road." *Id.* at 20. As Mr. Ebai tells it, he had no choice but to keep driving the wrong way.[5] *Id.*

At approximately 4:20 a.m., Officer Wood-Thomas, driving a marked U.S. Secret Service Police cruiser, was on his way back to the White House Complex after assisting another Officer with vehicle maintenance near the Taft Bridge in Northwest Washington. Officer Mem.[6] at 1. He observed Mr. Ebai's Chevrolet Sonic, without a turn signal, make an illegal left turn onto 27th Street Northwest, a one-way street for southbound traffic. *Id.* The officer witnessed the Sonic drive the wrong way around two oncoming southbound cars. *Id.* Officer Wood-Thomas activated his emergency lights and attempted to make a traffic stop. *Id.*

Mr. Ebai noticed the lights and sirens and understood that they had been activated because he had driven the wrong way on a one-way street. Ebai Dep. at 24. He recalled that he "initially" pulled over but then he "panicked." *Id.* at 25; Pl. Dep. at 42. Even though he knew that the police officer directed him to pull over, Mr. Ebai did not ultimately comply because he was "afraid" because there were two black males with dreadlocks in the car and "no witnesses."

---

[5]     Mr. Ebai could not identify the specific location where he made the illegal left turn. Ebai Dep. at 22-23.

[6]     Citations to "Officer Mem." refer to the Memorandum dated July 14, 2018, by Officer-Wood Thomas regarding the "Incident on July 8, 2018." This memorandum is submitted as an exhibit to the Declaration of Clayton Wood-Thomas, dated October 13, 2020. ECF No. 24-3. For the Court's convenience, that Declaration is submitted herewith.

Ebai Dep. at 25.  According to Mr. Ebai, he believed that "[a]nything could have happened" because he had "watched countless amounts of videos of people, black males, getting killed—gunned down by police officers, and it started from a routine traffic stop."  *Id.* at 25-26.

Rather than follow the officer's direction to pull over and stop, Mr. Ebai continued northbound on 27th Street before making a right turn onto K Street. Officer Mem. at 1. Officer Wood-Thomas was about 50 to 75 feet behind the Sonic. Officer Dep.[7] at 21.  At this point, the officer radioed the Joint Operations Center that he was attempting to conduct a traffic stop and provided the location, vehicle description, license plate number, and direction of travel, but did not receive an immediate response. Officer Mem. at 1.

### III.   MR. EBAI ATTEMPTS TO FLEE FROM OFFICER WOOD-THOMAS, ENTERS THE INTERSTATE, DRIVING AGAINST ONCOMING TRAFFIC, AND COLLIDES WITH AN ONCOMING VEHICLE.

Officer Wood-Thomas continued to follow Mr. Ebai's Sonic at a normal rate of speed when both cars were stopped at a traffic light at K and 24th Streets. Officer Mem. at 1.  Instead of pulling over, the Sonic abruptly made a U-turn at a "higher than normal" rate of speed, causing the tires to squeal.  *Id.*  Mr. Ebai recalls that he took action to evade the officer and accelerated as he made a U-turn. Ebai Dep. at 28.  The Sonic continued speeding westbound on K Street and weaved between multiple lanes of traffic until turning right onto 26th Street at a high rate of speed. Officer Mem. at 1.

Plaintiff's recollection of what was happening inside the red Sonic is limited.  He does not know why the police wanted to pull over the car and he "just wanted to get out of the vehicle."  Pl. Dep. at 49, 60-62.  Plaintiff, however, did not ask Mr. Ebai to pull over and stop or let Plaintiff out of the vehicle because he was "extremely scared" and "panicked."  *Id.* at 49-50,

---

[7]   Citations to "Officer Dep." refer to the Zoom Deposition of Clayton Wood-Thomas, taken January 20, 2022.  Relevant excerpts are attached hereto as Exhibit D.

54.  Plaintiff's impression is that "we were moving at such a high rate of speed," but he did not look at the speedometer and does not know how fast Mr. Ebai or Officer Wood-Thomas were driving.  *Id.* at 50-54.  Despite not knowing how fast the cars were moving, Plaintiff characterizes the episode as a "high speed chase" but cannot identify the location at which the "high speed chase" occurred.[8]  *Id.* at 52, 70.

Mr. Ebai continued speeding and driving recklessly while making a left turn from 27th Street onto westbound L Street and then headed the wrong way down a ramp onto Potomac Parkway, causing multiple motorists to evasively maneuver themselves out of the way to avoid a collision.[9]  Officer Mem. at 2.  The Sonic then merged onto eastbound Interstate 66 driving westbound—that is, against oncoming traffic—at an unreasonable rate of speed.  *Id.*

Officer Wood-Thomas decided to drive behind Mr. Ebai's vehicle with emergency lights and sirens activated to alert other motorists of the threat that Mr. Ebai's vehicle posed to other motorists and public safety.  *Id.*  Officer Wood-Thomas estimated that he was about 100 to 150 yards behind.  Officer Dep. at 17.  At this point, the Officer was no longer pursuing Mr. Ebai but intended only to warn other motorists.  *Id.* at 17-18 ("That was the only reason I was there was for public safety.  I was trying to warn the oncoming traffic with my emergency lights and siren."  Officer Wood-Thomas continued to broadcast the Sonic's location and requested that Virginia police be notified.  Officer Mem. at 2.  Unlike Mr. Ebai, Officer Wood-Thomas did not maneuver in and out of traffic but "stuck to the outside of the turns that would allow my lights to be visible for a further distance for oncoming traffic."  Officer Dep. at 18.

---

[8]     Plaintiff also claimed that the vehicles were "weaving in and out," but does not recall that Officer Wood-Thomas was weaving in and out of other vehicles.  Pl. Dep. at 66.

[9]     Plaintiff asserted that Officer Wood-Thomas was "leading" Mr. Ebai to drive in the wrong direction onto the Interstate.  Pl.'s Interrog. Resps. (response to Interrogatory No.9); Pl. Dep. at 62-64.

As Officer Wood-Thomas approached Exit 73, he was ordered by the Joint Operations Center to discontinue following Mr. Ebai's Sonic, and the officer slowed his vehicle.  At that moment, he observed the Sonic collide with another car, causing both vehicles to become momentarily airborne.  Officer Mem. at 2.  Mr. Ebai "was attempting to pull over to the far right but I didn't make it.  And that's when I got into the accident."  Ebai Dep. at 29.

Matthew A. Konopka was in a gray four-door Toyota Corolla, driving eastbound on Interstate 66 to his job at the White House, where he was detailed to the National Security Council.  Konopka Decl.[10] ¶ 3.  At about 4:30 a.m. near North Rhodes Street in Arlington, Virginia, Mr. Konopka was driving in the left lane when he noticed the red and blue flashing lights of a law enforcement vehicle in the distance.  *Id.* ¶ 4.  Upon seeing those lights, Mr. Konopka instinctively slowed down and was alerted that there was a reason to drive more carefully.  *Id.* ¶¶ 4, 7.  Suddenly, Mr. Konopka saw white headlights speeding towards his vehicle and had time only to swerve to the left as hard as possible, toward the concrete wall that separated the eastbound and westbound lanes of the interstate.  *Id.* ¶ 5.  Officer Wood-Thomas witnessed the vehicles collide, "causing both vehicles to become momentarily airborne and causing disabling damage to both vehicles."  Officer Mem. at 2.

Mr. Konopka's Corolla landed with its rear end sitting on the concrete wall dividing the eastbound and westbound lanes of Interstate 66.  Ex. E (Officer Barnes Police Report); Konopka Decl. ¶ 6.  Mr. Ebai's Sonic remained in the middle of the roadway with "heavy front end damage."  Ex. E.  After the collision, Mr. Ebai fled the scene on foot.  Officer Mem. at 3.  Officer Wood-Thomas saw the Sonic catch fire, and he retrieved the fire extinguisher from his

---

[10]     Citations to "Konopka Decl." refer to the Declaration of Matthew A. Konopka, dated May 19, 2022, submitted herewith.

police cruiser to extinguish the flames just as local police officers removed Plaintiff from the car. *Id.*  Plaintiff was taken to George Washington University Hospital, where he was treated for injuries.

## PROCEDURAL HISTORY

On or about November 15, 2019, Plaintiff submitted an administrative claim to the Department of Homeland Security, of which the U.S. Secret Service is a component agency. The Standard Form 95 alleges that Officer Wood-Thomas was "engaged in a[n] illegal and dangerous high-speed motor vehicle chase" and acted "consciously in disregard of [Plaintiff]'s rights," acted with "reckless indifference," and his conduct "amounted to gross negligence and willful and wanton conduct."  Garrett Decl.[11] Ex. 1.  On April 21, 2020, the U.S. Secret Service denied the claim.  *Id.* Ex. 2.

On July 21, 2020, Plaintiff commenced this action in the Eastern District of Virginia. *Korsah v. United States*, Civ. A. No. 1:20-0820-LO-MSN (E.D. Va.).  On October 26, 2020, Plaintiff filed an Amended Complaint alleging a single negligence claim under the FTCA based on the theory that Officer Wood-Thomas was negligent in pursing Mr. Ebai's vehicle on the morning of July 8, 2018.  ECF No. 10.  On November 3, 2020, the United States moved to dismiss based on the applicability of the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), or, in the alternative, to transfer the case to the District of Columbia.  ECF No. 13.  On December 8, 2020, the Court granted Defendant's motion to transfer.  ECF No. 18.  On April 6, 2021, this Court denied the motion to dismiss without prejudice and directed the parties to address D.C. Circuit case law on the Federal Tort Claims Act.  ECF No. 22.

---

[11]    Citations to "Garrett Decl." refer to the Declaration of David Garrett, dated May 4, 2021. ECF No. 24-2.  For the Court's convenience, that Declaration is submitted herewith.

On May 5, 2021, Defendant renewed its motion to dismiss Plaintiff's claim based on the FTCA's discretionary function exception.  ECF No. 24.  In response, Plaintiff submitted an Affidavit stating that Mr. Ebai had not committed any moving violations until the pursuit by Officer Wood-Thomas began.  ECF No. 25-2.  On June 25, 2021, the Court denied the motion because Plaintiff's affidavit created a factual dispute about whether the pursuit policy applies. ECF No. 29.

Between approximately August 2021 and April 2022, the parties completed discovery, including the exchange of written requests, depositions, independent medical examinations, and expert reports.  On April 13, 2022, the Court established a briefing schedule for the United States' Motion for Summary Judgment.

## APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action.  *Celotex Corp.*, 477 U.S. at 327.  Indeed, the "very mission" of Rule 56 is "to assess the proof in order to see whether there is a genuine need for trial."  Fed. R. Civ. P. 56(e) (advisory committee note).

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson*, 477 U.S. 242.  A genuine issue of material fact is one that could change the outcome of the litigation.  *Id*. at 247.  The party moving for summary judgment need not prove the

absence of an essential element of the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Id*. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To avoid summary judgment, the plaintiff must present objective evidence that would enable the court to find an entitlement to relief. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *Potter v. District of Columbia*, 558 F.3d 542, 549 (D.C. Cir. 2009) ("[M]erely colorable or not significantly probative evidence . . . is insufficient to defeat a summary judgment motion." (internal quotation marks and citation omitted)). Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown. *See, e.g.*, *David v. District of Columbia*, 246 F. Supp. 3d 647 (D.D.C. 2017) (non-moving party's opposition "must consist of more than mere unsupported allegations or denials").

Furthermore, "[s]ummary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements." *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) ("Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements."); *Lindsey v. Rice*, 524 F. Supp. 2d 55, 60 (D.D.C. 2007) (granting summary judgment where plaintiff's "self-serving statements [were] too conclusory to survive [defendant's] summary judgment motion").

## THE FEDERAL TORT CLAIMS ACT

The law is well-settled that the United States, as a sovereign, may be sued only to the extent that it has consented to suit by statute. *See Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994); *United States v. Testan*, 424 U.S. 392, 399 (1976). A waiver of immunity must be explicit. *See Honda v. Clark,* 386 U.S. 484, 501 (1967). The exclusive remedy for common law tort claims is the FTCA. 28 U.S.C. § 2679(a); *Meyer*, 510 U.S. at 473. The FTCA authorizes district courts to hear suits against the United States

> for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); *see also Cope v. Scott*, 45 F.3d 445, 447 (D.C. Cir. 1995).

Plaintiff filed this action under a negligence theory. Under the FTCA, negligence cases such as this one are governed by the law of the state in which the claim arose. *See* 28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1, 5-7 (1962). Hence, the governing law is that for negligence of the District of Columbia. *See* ECF No. 18 ("The parties agree that District of Columbia law, rather than Virginia law, should govern in this matter because the relevant acts happened entirely in the District of Columbia."). To establish negligence, "'a plaintiff must prove a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach.'" *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) (quoting *District of Columbia v. Beretta, U.S.A., Corp.*, 847 A.2d 1127, 1134 n.2 (D.C. 2004)).

11

**ARGUMENT**

The United States moves for summary judgment on two grounds.  First, the Court lacks subject matter jurisdiction because the discretionary function exception applies to Officer Wood-Thomas' conduct.  Second, if the Court finds that the exception does not apply, the United States is entitled to summary judgment because Plaintiff has not articulated a plausible theory, based on admissible evidence, that Officer Wood-Thomas was negligent on the morning of July 8, 2018.

**I.      THE DISCRETIONARY FUNCTION EXCEPTION APPLIES TO THE CONDUCT OF OFFICER WOOD-THOMAS.**

Under the framework for determining the applicability of the discretionary function exception, the Court considers two questions.  The first step is whether the challenged actions "are discretionary in nature" and "involve an element of judgment or choice," *United States v. Gaubert*, 499 U.S. 315 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531 (1988)).  If so, the second inquiry is "whether that [conduct] is of the kind that the discretionary function exception was designed to shield," *Gaubert*, 499 U.S. at 322-23 (quoting *Berkovitz*, 486 U.S. at 536); *see also Loumiet v. United States*, 828 F.3d 935, 942 (D.C. Cir. 2016) ("[I]f the conduct does involve some element of judgment or choice, we must ask . . . whether the actions or decisions 'were within the range of choice accorded by federal policy and law and were the results of policy determinations'") (quoting *Berkovitz*, 486 U.S. at 538; *Loughlin v. United States*, 393 F.3d 155, 163 (D.C. Cir. 2004) (same); *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995) (same).

The discretionary function exception applies to Officer Wood-Thomas' conduct because his decision to pursue the fleeing vehicle in which Plaintiff was a passenger (1) involved an element of judgment and choice and (2) reflected judgment of the kind that the discretionary function exception was designed to shield.  For these reasons, as explained in further detail

12

below, the Court should conclude that it lacks subject matter jurisdiction and dismiss this case. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action.").

### A.   The Court's Ruling on Defendant's Motion to Dismiss

The United States' prior motions to dismiss argued that the discretionary function exception deprived the Court of subject matter jurisdiction over Plaintiff's FTCA claim. Specifically, the United States argued that the Uniformed Division's vehicular pursuit policy applied and that Officer Wood-Thomas' decision to pursue Mr. Ebai's vehicle "necessarily involved balancing competing public policy considerations, such as the enforcement of the law on the one hand and the safety of citizens on the other."  ECF No. 18.

In analyzing this argument, the Court concluded that the first step in the analysis is to determine whether the pursuit policy applies.  ECF No. 29 at 4.  That is, the United States first must establish that the person being pursued "has committed a felony or attempted to commit a felony in the member's presence."  *See* Garrett Decl. Ex. 2.  The Court noted that the United States had cited D.C. Code § 50-2201.05b as the applicable felony.  That statute applies to a driver who "knowingly . . . attempts to elude a law enforcement officer, following a law enforcement officer's signal to bring the motor vehicle to a stop" and does so "in a manner that would constitute reckless driving."  D.C. Code § 50-2201.05b(b)((1)-(2); *see* ECF No. 29 at 4-5.

At this point in the analysis, the Court referenced Plaintiff's Affidavit, which states that Mr. Ebai committed no moving violation until after the pursuit by Officer Wood-Thomas began. ECF No. 29 at 5 (citing Pl. Aff.[12] ¶ 4).  The Court concluded that, "however unlikely this account may be," it was bound to credit Plaintiff's statement, which created a factual dispute

---

[12]    Citations to "Pl. Aff." refer to Plaintiff's Affidavit, dated May 21, 2021.  ECF No. 27.

about whether the pursuit policy applies. *Id.* at 5-6.  Given this factual dispute and the Court's finding that the facts regarding the discretionary function exception were intertwined with the merits, the Court denied the United States' motion to dismiss. *Id.* at 6.

**B.      The Secret Service's Vehicular Pursuit Policy Applies to Officer Wood-Thomas' Actions.**

In accordance with the Court's ruling, based on the relevant deposition testimony, Defendant renews its argument that the discretionary function exception applies to this case and that the Court therefore lacks subject matter jurisdiction over Plaintiff's FTCA claim.  The United States will first address the applicability of the Secret Service's vehicular pursuit policy, including the factual issue identified by the Court, and then turn to the two-step inquiry regarding the applicability of the discretionary function exception.

1. *Relevant Policy Provisions*

The Uniformed Division has a policy governing "emergency and pursuit driving" or vehicular pursuits.  *See generally* Garrett Decl. Ex. 3 at 1-8 (Secret Service Policy).  The policy authorizes vehicular pursuits to prevent the escape of a person who has committed, or attempted to commit, a felony involving an attack that the officer has reasonable cause to believe could result in death or serious bodily injury. *Id.* at 5.  Officers are prohibited from "pursing vehicles for the sole purpose of effecting a traffic stop." *Id.*  The policy instructs Uniformed Division officers that "[v]ehicular pursuits . . . may be initiated after they have attempted, by using appropriate warning devices from a close proximity, to stop a violator who is already in a vehicle if the violator has ignored the stop attempt and attempted to flee in the vehicle." *Id.* at 6.

In deciding to initiate and continue any pursuit, Uniformed Division officers are "expected to exercise good judgment in weighing the benefits of [the] emergency and pursuit driving against the risks involved." *Id.* at 5.  Six factors guide this risk-benefit analysis:

14

1.      The nature of the emergency or the seriousness of the suspected offense, and the threat posed to the community by not engaging in emergency or pursuit driving;

2.      The probability of apprehending the suspect at another time if the decision is made to forego or discontinue pursuit;

[3].     The time of day, weather; road; lighting; and traffic conditions, including volume of vehicular and/or pedestrian traffic;

4.      The condition of the government vehicle and its driver, and that of the suspect vehicle and its driver, if known;

5.      The geographic location of the pursuit (i.e., rural, urban, etc.); and

6.      The benefits to be derived by emergency or pursuit driving compared to the risks to the safety of all concerned.

*Id.* at 5-6.  The policy advises Uniformed Division officers that "the emergency or pursuit driving should be terminated immediately" only when they or a supervisor "determines . . . that the risks outweigh the benefits in a particular situation."[13]  *Id.* at 6.  And in terms of how to operate a vehicle during a pursuit, that decision is merely an inherent part of the discretionary, risk-benefit analysis of whether to initiate and continue a pursuit.  *See id.* (considering "benefits to be derived by emergency or pursuit driving compared to the risks to the safety of all concerned"); *see also id.* Ex. 4 (Secret Service Manual) at 2 ("While operating [Secret Service] vehicles in the performance of official duties, authorized [Secret Service] personnel *may*

---

[13]     The policy directs Uniformed Division officers to "the Investigative Manual, section INV-29, Emergency and Pursuit Driving" for information about vehicular pursuits.  That manual reiterates much of what is already laid out in the policy.  *See* Garrett Decl. Ex. 4 (Secret Service Manual) at 2 ("As emergency and pursuit driving involve techniques and tactics that may increase the danger inherent in operating a motor vehicle, authorized operators of U.S. Secret Service (USSS) vehicles must weigh the benefit of initiating, and continuing[,] such action against the risks to the public . . . .  USSS personnel operating authorized vehicles are expected to exercise good judgment in weighing the benefits of emergency and pursuit driving against the risks involved."); *id.* at 2-3 (factors to weigh in risk-benefit analysis).

encounter extreme situations where the threat to public safety, a [Secret Service] protectee, or [Secret Service] personnel necessitates violation of local or State traffic laws.").

### 2. *Felonies Applicable to the Vehicular Pursuit of Mr. Ebai*

As the Court previously found, the applicable felony is D.C. Code Section 50-2201.05b, "Fleeing from a law enforcement officer in a motor vehicle." Per subsection (b)(2), a motor vehicle operator who "knowingly . . . attempts to elude a law enforcement officer, following a law enforcement officer's signal to bring the motor vehicle to a stop" and, while doing so, "drives the motor vehicle in a manner that would constitute reckless driving," is subject to up to five years imprisonment. D.C. Code § 50-2201.05b(b)(2) (incorporating subparagraph (b)(1)).

The D.C. Code defines "reckless driving" as driving "upon a highway carelessly and heedlessly in willful or wanton disregard for the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger a person or property."[14] D.C. Code § 50-2201.04(b). In this case, there is no question that Officer Wood-Thomas signaled Mr. Ebai to bring his vehicle to a stop, but the driver attempted to elude Officer Wood-Thomas and did so while driving recklessly, including at high speed on the wrong side of Interstate 66 and Rock Creek Parkway while weaving in and out of oncoming vehicles.

### 3. *The Officer Initiated a Vehicular Pursuit Only After Mr. Ebai Ignored a Signal to Stop and Recklessly Attempted to Elude the Officer.*

As the Court found, under the Uniformed Division's policy, "officers cannot exercise *any* discretion until they determine that the person 'has committed a felony or attempted to commit a felony in the member's presence.'" ECF No. 29 at 4 (quoting the policy). Paraphrasing the

---

[14]     In addition, a person is guilty of "aggravated reckless driving" when the person engages in "reckless driving" and also "(1) [o]perates the vehicle at a rate or speed at or greater than 30 miles per hour over the stated speed limit; (2) [c]auses bodily harm or permanent disability or disfigurement to another; or (3) [c]auses property damage in excess of $1,000." D.C. Code § 50-2201.04(b-1).

relevant D.C. Code provision, the issue is whether Officer Wood-Thomas began his pursuit after Mr. Ebai knowingly attempted to elude the officer in a reckless manner, following the officer's signal to pull over.  Here, the undisputed evidence is that the officer initiated a pursuit only after Mr. Ebai committed three moving violations, ignored the officer's signal to stop, and recklessly attempted to evade the officer by speeding up, running a red light, and making an illegal U-turn.

The testimony on this issue is clear.  Officer Wood-Thomas reported that he activated his emergency lights after Mr. Ebai had committed three moving violations: (1) making an illegal turn (2) without having activated the turn signal and then (3) driving the wrong way on a one-way street.  Officer Mem. at 1.  Mr. Ebai understood that driving the wrong way on a one-way street is a moving violation and that Officer Wood-Thomas activated his lights and sirens for that reason.  Ebai Dep. at 24-25.  Mr. Ebai also understood that, by activating his lights and sirens, the officer wanted him to pull over and stop.  *Id.* at 25.

Mr. Ebai disregarded the signal to pull over and stop.  *Id.* at 26.  Instead, he drove eastbound on K Street and, stopped at a red light at 24th Street, abruptly accelerated and made a U-turn onto westbound K Street to elude the police.  *Id.* at 27-28 (but testifying that he picked up speed and made the U-turn to evade the officer while on L Street); Officer Mem. at 1.  Officer Wood-Thomas observed that Mr. Ebai drove on westbound K Street "at a higher than normal rate of speed[,] weaving between multiple lanes of traffic."  Officer Mem. at 1.  At this point, Officer Wood-Thomas sped up to keep pace with Mr. Ebai, who turned right onto 26th Street "in a reckless manner with no concern for the safety of other motorists, pedestrians, and the general public."  *Id.* at 1-2.

When Mr. Ebai drove the wrong way down the ramp that led him to drive westbound on eastbound Interstate 66, Officer Wood-Thomas no longer was concerned with effecting a traffic

17

stop.  Rather, he decided to travel approximately 100 or 150 yards behind Mr. Ebai's vehicle "in an attempt to alter other motorists of the threat [Mr. Ebai's] vehicle posed to other motorists and public safety."  Officer Mem. at 2; *see also* Officer Dep. at 17-18 ("That was the only reason I was there was for public safety.  I was trying to warn the oncoming traffic with my emergency lights and siren.").  The collision occurred minutes later.

### 4.  *Plaintiff's Affidavit Is Inadmissible Because He Lacks Foundation to Address the Sequence of Events.*

Defendant expects that Plaintiff will argue that his May 21, 2021, Affidavit serves to create a material dispute of fact concerning the applicability of the Secret Service's policy.  The Court, however, should conclude that the statements in that affidavit are inadmissible because Plaintiff has not established that he has personal knowledge about the sequence of events on the morning of July 8, 2018.  Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Plaintiff's Affidavit asserts that he was a passenger in Mr. Ebai's vehicle in the morning hours of July 8, 2018.  Given that statement, it normally would be a fair assumption that he had been paying attention to what was happening and had a vivid recollection of the facts set forth in the affidavit.  Plaintiff's deposition testimony, however, demonstrates that he does not recall the sequence of events and cannot establish that he has personal knowledge.

Plaintiff testified under oath that he is unable to recollect numerous facts regarding the events in question.  He does not remember the location of the music club that he attended or what he was drinking or how many drinks he had.  Pl. Dep. at 35, 37.  He does not remember

where Officer Wood-Thomas first attempted to pull over Mr. Ebai or what the circumstances were that led the officer to follow the car.  *Id.* at 42.  He does not know the location of what he describes as a "high-speed chase."  *Id.* at 51, 70.  Plaintiff also does not know how fast Mr. Ebai or Officer Wood-Thomas were driving.  *Id.* at 52, 53.  He did not recall that, at a traffic light, Mr. Ebai sped up and did a U-turn.  *Id.* at 52-53, 61.  He did not recall that Mr. Ebai drove onto a ramp that led to Potomac Parkway.  *Id.* at 54. Nor did Plaintiff recall the car driving the wrong way on Interstate 66.  *Id.* at 55 ("What—what I remember is just a high speed—a high-speed chase, going very fast on a road, and swerving and going in and out and – and just weaving in and out.  That's all I remember, that is what I recall.").  Plaintiff further did not recall how many other cars were on the road in Washington before entering the highway.[15]  *Id.* at 82.

In addition to Plaintiff's inability to recall any facts about what was happening on the road, he was asked specifically about the sequence of the events that he described in the Affidavit.  Plaintiff was asked which occurred first:  moving violations committed by Mr. Ebai or Officer Wood-Thomas' "pursuit" of the Chevrolet Sonic.  This was an issue addressed in his Affidavit, which clearly stated that the "pursuit" had occurred first.  At his deposition, however, Plaintiff did not know whether the illegal turn—which Plaintiff conceded was a "moving violation"[16]—occurred before or after the officer activated the lights and sirens on his police cruiser.  Pl. Dep. at 48.  As Plaintiff testified: "I recall Victor pulling off, and I just remember seeing the lights . . .  I was wondering what was going on; I was scared.").  This testimony is

---

[15]    This testimony is inconsistent with Plaintiff's Affidavit, which stated that "traffic was minimal in the area where we were."  Pl. Aff. ¶ 2.

[16]    Even though Plaintiff's Affidavit twice used the phrase "moving violation," Pl. Aff. ¶¶ 3-4, his counsel objected to questions involving the phrase on the basis that they called for a "legal conclusion," Pl.'s Dep. at 44, 46, 47.  Plaintiff's testimony was that he understood that making an illegal turn and that driving the wrong way on a one-way street were moving violations.  *Id.* at 46-47.

inconsistent with the sequence of events that Plaintiff described in his Affidavit.  More importantly, it shows that he does not have personal knowledge of the facts when counsel submitted Plaintiff's Affidavit to contend that there was a factual dispute on the issue.[17]

In the summary judgment context, courts routinely decline to credit affidavits when the assertions are incomplete or not based on personal knowledge.  *See Crenshaw v. Georgetown Univ.*, 23 F. Supp. 2d 11, 17 (D.D.C. 1998) ("Because [the affiant] lacks personal knowledge of the file, her testimony would be inadmissible to prove its existence, and Plaintiff cannot use it to bolster her claim."); *see also Akridge v. Gallaudet Univ.*, 729 F. Supp. 2d 172, 183 (D.D.C. 2010); *see also Gen. Elec. Co. v. Jackson*, 595 F.Supp.2d 8, 36 (D.D.C.2009) (observing that when a "declaration is self-serving and uncorroborated" it is "of little value at the summary judgment stage").  That is the case here.  Plaintiff's sworn testimony was clear that he does not recall the events of the morning of July 8, 2018.  Accordingly, he has not established the requisite personal knowledge to support the admissibility of his Affidavit regarding the sequence of the events on the morning of July 8, 2018.  Plaintiff's Affidavit does not satisfy Rule 56(c)(4).

---

[17]    Even if Plaintiff had personal knowledge and sufficient recollection to testify about the sequence of events, the narrative in his affidavit is illogical.  Plaintiff asserts that the officer "commenc[ed] a pursuit" before Mr. Ebai committed any moving violations.  He does not define or explain the word "pursuit," but the Secret Service's policy defines "pursuit driving" as "the active attempt by the operator of an authorized emergency vehicle to apprehend fleeing suspects who are attempting to avoid apprehension through evasive tactics."  Garrett Decl. Ex. 4.  While Officer Wood-Thomas initially intended to pull over Mr. Ebai after the moving violations, the "pursuit" plainly did not occur until after Mr. Ebai disregarded a red stop light, accelerated, and executed a U-turn onto westbound K Street, where he continued driving erratically until he drove the wrong way down the ramp to enter Potomac Parkway.  At that point, Mr. Ebai "took action to evade the officer."  Ebai Dep. at 27-28.  Before then, the two cars were driving at a normal rate of speed, but Mr. Ebai refused to heed the officer's signals to pull over.

C.      **Officer Wood-Thomas' Conduct Involved an Element of Judgment and Choice.**

The first element of the discretionary function framework involves whether Officer Wood-Thomas' decision to pursue Mr. Ebai's fleeing vehicle involved an element of judgment and choice.  The relevant portions of the Secret Services' vehicular pursuit policy vest Uniformed Division officers with significant discretion in choosing when, how, and to what extent to commence, continue, and terminate the pursuit of fleeing vehicles.  The policy does not lay out any mandatory course of behavior (at least none that is relevant here) for Officer Wood-Thomas during the entirety of his pursuit of the fleeing vehicle.

Courts applying the two-part test set forth by the D.C. Circuit in *Gaubert* and *Berkovitz* routinely have found that similar agency policies afford law enforcement officers wide latitude in high-speed chases for purposes of the first prong of the discretionary function analysis.  *See Gallegos Reyes v. United States*, Civ. A. No. 19-0902, 2020 WL 248688, at *3 (W.D. Tex. Jan. 15, 2020); *Colombe v. United States*, Civ. A. No. 16-5094, 2019 WL 7629237, at *14 (D.S.D. July 30, 2019), *report and recommendation adopted*, 2019 WL 7628982 (D.S.D. Oct. 21, 2019); *Stearney v. United States*, Civ. A. No. 16-8060, 2018 WL 4407555, at *4 (D. Ariz. Sept. 17, 2018); *Many v. United States*, Civ. A. No. 15-3004, 2017 WL 2937596, at *4-5 (D.S.D. July 7, 2017); *Herrera v. United States*, Civ. A. No. 09-0756, 2010 WL 4236974, at *3-4 (S.D. Cal. Oct. 21, 2010); *see also Williams v. United States*, 314 F. App'x 253, 257-58 (11th Cir. 2009); *Horta v. Sullivan*, 4 F.3d 2, 19 (1st Cir. 1993) (noting that a police officer's decision to engage in a high-speed chase would fall within the FTCA's discretionary function exception if federal law governed that case, as police department "adopted guidelines that allow[ed] . . . police officers to conduct and participate in high speed pursuits when, in their judgment, the benefit of apprehension outweighs the risk to public safety"); *Kuhlman v. United States*, 822 F. Supp. 2d

1255, 1261-62 (M.D. Fla. 2011) ("Deputy Marshals . . . must necessarily rely on their own judgment in attempting to locate and apprehend a suspect fleeing on foot in a populated area."). This caselaw supports application of the discretionary function exception here, even though this did not involve at all times a "high-speed chase"—the cars were traveling at a "higher than normal rate of speed" only for a minute or two while on K, 26th, and L Streets.

Defendant expects that Plaintiff may point to portions of the Secret Service's policy that contain mandatory language such as "shall" and "must." *See, e.g.*, Garrett Decl. Ex. 3 at 5 (noting that the officer "shall" consider the six risk/benefit factors in deciding whether to initiate, continue, or terminate a pursuit); *id.* at 7 (setting forth procedures that vehicular pursuits "shall" follow). Such mandatory language in certain policy provisions, however, does not eliminate the officer's judgment and choice in determining whether to conduct a pursuit of a fleeing vehicle.

*Colombe* is particularly instructive on this point. 2019 WL 7629237, at *13-15. There, in determining whether the decision to engage in a vehicular pursuit could be considered discretionary under the FTCA, the Court examined the relevant pursuit policy. It observed that "[p]ortions of the policy use[d] terms such as 'will' and 'must.'" *Id.* at *14 (citations omitted). For example, the policy instructed officers that they "*must* exercise sound judgment and carefully consider the seriousness of the offense, the possible consequences, and the safety of citizens" when conducting a pursuit. *Id.* (citation and quotation marks omitted). Nevertheless, the use of words such as "will" or "must" was not dispositive as to whether the pursuit was discretionary "so long as the policy as a whole evince[d] an intent that the decision [of] whether a pursuit should be undertaken (or continued) is discretionary." *Id.* (citing *Many*, 2017 WL 2937596, at *4). To the contrary, the Court had to "consider[] the language of the pursuit policy as a whole—not in piecemeal fashion . . . ." *Id.* After doing so, the Court concluded that although

"some portions of the pursuit policy [were] phrased in mandatory terms, the ultimate decisions of whether to initiate and whether to continue a pursuit are left to the sound discretion of the officers." *Id.* (footnote omitted).  It found that discretion was "particularly manifested in the sections of the policy which directly address authorization for a pursuit[,] factors to consider before engaging in and while continuing a pursuit and guidelines for pursuits." *Id.* (citations omitted).

Here, analogous sections of the Uniformed Division's pursuit policy here manifest an intent to afford Uniformed Division officers, such as Officer Wood-Thomas, discretion in deciding how and when to start, continue, and stop a high-speed chase. *See* Garrett Decl. Ex. 3 (Secret Service Policy) at 5-6; *see also id.* Ex. 4 (Secret Service Manual) at 2.  That the policy instructs officers that they shall terminate a pursuit if injury to citizens becomes evident is not dispositive.  Specifically, in deciding when injury to citizens becomes evident during a vehicular pursuit, Uniformed Division officers are "expected to exercise good judgment . . . ."  Garrett Decl. Ex. 3 at 5; *see also* ECF No. 11 (Pl.'s Opp'n to Defendant's First Mot. to Dismiss) at 7 ("Admittedly, and per the Secret Service Uniformed Division handbook, officers must exercise judgment and discretion in executing their tasks.").  Again, the exercise of judgement entails a risk-benefit analysis that includes several factors, one of which is the benefit of "pursuit driving compared to the risks to the safety of all concerned."  Garrett Decl. Ex. 3 at 5-6.  And when the result of that analysis is that "the risks outweigh the benefits in a particular situation, . . . the emergency or pursuit driving should be terminated immediately." *Id.* at 6.

Based on the policy language and the relevant case law, there can be no serious dispute that Officer Wood-Thomas' decision to pursue Mr. Ebai's vehicle involved "an element of judgment or choice."

**D.     Officer Wood-Thomas' Conduct Involved the Type of Judgment That the Discretionary Function Exception Was Enacted to Shield from Liability.**

On the second element of the framework, Officer Wood-Thomas' decision—to pursue the fleeing vehicle in which Plaintiff was a passenger—required the type of judgment that the discretionary function exception was enacted to shield from tort liability.  The exercise of his judgment necessarily involved balancing competing public policy considerations, such as the enforcement of the law on the one hand and the safety of citizens on the other.  *See* Garrett Decl. Ex. 3 (Secret Service Policy) at 5 ("The object of any police pursuit is to apprehend a law violator without causing unnecessary peril to the member(s) involved, or the persons or property of citizens.  When necessary, a pursuit must be undertaken with prudence and regard for the safety of all concerned."); *see also* Officer Mem. at 3-4 (explaining that safety of other motorists and pedestrians was considered while pursuing fleeing vehicle).  Mr. Ebai made multiple reckless decisions, such as driving against the flow of traffic on Potomac Parkway and Interstate 66, which placed other drivers, passengers, and pedestrians at substantial risk.  By following Mr. Ebai's vehicle with both flashing lights and sirens, pedestrians and other drivers were alerted to the danger posed by Mr. Ebai's reckless driving.  Officer Wood-Thomas could not have known that Mr. Ebai would seek to evade a traffic stop by going the wrong direction down an exit ramp, and, once Mr. Ebai took this dangerous action, the importance of following Mr. Ebai so that the Secret Service's cruiser's lights and sirens would alert other citizens to the risks presented by Mr. Ebai became even greater.  Under these circumstances, there can be no doubt that the Secret Service's actions were comfortably "within the range of choice accorded by federal policy and law and were the results of policy determinations."  *Berkovitz*, 486 U.S. at 538.

Courts routinely have held, in analyzing the applicability of the discretionary function exception, that law enforcement officers engage in this balancing act when involved in high-

speed chases.  *Reyes*, 2020 WL 248688, at *3; *Colombe*, 2019 WL 7629237, at *16-17;

*Stearney*, 2018 WL 4407555, at *4; *Many*, 2017 WL 2937596, at *5; *Herrera*, 2010 WL

4236974, at *4; *see also Horta*, 4 F.3d at 19; *Hurtado v. United States*, Civ. A. No. 94-2483,

1996 WL 65115, at *10 (S.D. Tex. Feb. 8, 1996) ("[H]igh-speed chases usually require the

exercise of discretion, including decisions about whether to embark on such a chase, what speed

to go, what route to take, whether to call for back-up, and when to curtail the chase.").  Even

though this was not a "high speed chase," but rather a short-lived vehicular pursuit, the same

principles regarding the officer's decision-making apply to the facts here, and the Court should

reach the same result.

*      *      *

In sum, the two-step inquiry reveals that the discretionary function exception applies in

this case.  The exception bars Plaintiff's FTCA claim because Officer Wood-Thomas' decision

to pursue the fleeing vehicle involved an element of judgment or choice and required him to

balance competing public policies.  This Court accordingly lacks subject matter jurisdiction.

## II.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S NEGLIGENCE CLAIM.

Even if the Court declines to grant summary judgment in the United States' favor based

on the discretionary function exception, it should do so because Plaintiff has not articulated any

plausible theory to support a negligence claim.

The United States served interrogatories asking Plaintiff to describe each act or omission

that constitutes the basis of his claims and to state the factual basis as to why each act or

omission was negligent.  In response, Plaintiff identified three theories as to why Officer Wood-

Thomas was negligent: (1) he "pursued us for a simple traffic violation when the Secret Service

policy is to only pursue if a felony is or has been committed"; (2) Mr. Ebai was traveling at a

25

normal rate of speed, was able to obtain the car's "tag information," and could have ticketed Mr.

Ebai "in another way" rather than pursue the vehicle; and (3) that Officer Wood-Thomas did not

initially receive responses to his radio calls indicates that "those officers ignored his concerns

and did not see a threat."  Pl.'s Interrog. Resps. (responses to Interrogatory Nos. 10 and 11).  For

the following reasons, none of these theories are supported by admissible evidence.  In the

absence of any viable, evidence-based theory for negligence, summary judgment should be

granted in the United States' favor.

      **A.**    **Plaintiff Mischaracterizes the Applicable Secret Service Policy and**
            **Misapplies It to the Undisputed Admissible Evidence.**

Plaintiff's first theory is that, because Officer Wood-Thomas' engagement with Mr.

Ebai's vehicle began with "a simple traffic violation," the officer violated the applicable agency

policy to pursue because no felony had been committed.  This argument is based on a flawed

understanding of the applicable policy.

Plaintiff mistakenly believes that the "pursuit" began when Officer Wood-Thomas

initially signaled Mr. Ebai to pull over and continued to follow him at a normal rate of speed.

The agency defines "pursuit driving" as "the active attempt by the operator of an authorized

emergency vehicle to apprehend fleeing suspects who are attempting to avoid apprehension

through evasive tactics."  Garrett Decl. Ex. 4.  Mr. Ebai admits that he attempted to evade

Officer Wood-Thomas when he sped up and made a U-turn, heading westbound on K Street, and

the officer reports that Mr. Ebai was driving recklessly at the time, "weaving between multiple

lanes of traffic."  Officer Mem. at 1; Ebai Dep. at 27.

Mr. Ebai's conduct constituted a felony under D.C. Code § 50-2201.05b(b)(2) because he

attempted "to elude a law enforcement officer, following a law enforcement officer's signal to

bring the motor vehicle to a stop" and, while doing so, "drives the motor vehicle in a manner that

would constitute reckless driving."  Officer Wood-Thomas' "pursuit" of Mr. Ebai at that point was plainly consistent with the policy.

The pursuit ended a couple of minutes later, when Mr. Ebai drove the wrong direction down the ramp to Potomac Parkway.  At that point, Officer Wood-Thomas solely was concerned with warning oncoming motorists of the danger Mr. Ebai posed.  The officer remained a safe distance (approximately 100 to 150 yards) behind Mr. Ebai's vehicle, with the officer's vehicle's lights and sirens activated, and the officer made no further attempt to pull over the vehicle. Officer Mem. at 2; Officer Dep. at 17.

Accordingly, Plaintiff is wrong that the officer pursued Mr. Ebai "for a simple traffic violation."  Pl.'s Interrog. Resps. (response to Interrogatory No. 10.  Rather, the short-lived pursuit began when Mr. Ebai tried to flee from the officer by accelerating, making a U-turn, and driving recklessly, and it ended when Mr. Ebai entered the ramp toward the interstate.  Officer Wood-Thomas' actions in this regard were consistent with the agency's policy.

**B.    Plaintiff's Theory That Officer Wood-Thomas Could Have "Ticketed" Mr. Ebai "Another Way" Is Speculative and Illogical.**

Plaintiff next theorizes that because Officer Wood-Thomas had Mr. Ebai's license plate number, he could have let Mr. Ebai go free after Mr. Ebai refused to pull over.  Instead of continuing to follow and pursue Mr. Ebai, Plaintiff contends, the officer should have "just sent him a ticket" or arranged for another police officer to stop by Mr. Ebai's house later to hand him a ticket.  Pl.'s Interrog. Resps. (response to Interrogatory No. 10); Pl. Dep. at 76-78.

To the extent that this argument is different from the argument that Officer Wood-Thomas did not comply with the agency policy, the Court should reject it.  Defendant is unaware of any requirement that an officer abandon an effort to pull over a vehicle that has committed multiple traffic violations simply because that vehicle refuses to pull over.

To the contrary, given the recklessness that Mr. Ebai displayed on the road, it was prudent for Officer Wood-Thomas to try to pull him over to avoid the danger that he posed to pedestrians and other motorists and passengers.  Again, the "pursuit" portion of Officer Wood-Thomas' engagement with Mr. Ebai was relatively short, beginning on westbound K Street and ending a few blocks later, when Mr. Ebai headed the wrong way onto Potomac Parkway. Plaintiff has failed to articulate any plausible theory as to how Officer Wood-Thomas was negligent in this regard.

### C.   Plaintiff's Theory Based on Officer Wood-Thomas' Radio Calls Is Speculative and Illogical.

Plaintiff's third negligence theory is equally meritless.  He argues that because Officer Wood-Thomas stated in his memorandum that his radio calls did not receive an immediate response, it "seems to indicate those officers ignored his concerns and did not see a threat."  Pl.'s Interrog. Resps. (response to Interrogatory No. 10).

This theory makes no sense.  Plaintiff appears to be accusing certain unnamed Secret Service officials—those who either did receive or should have received Officer Wood-Thomas' radio transmissions—of failing to take some unspecified action.  To the extent that Plaintiff is advancing such an argument, the Court should reject it because it is unsupported by any evidence.  Plaintiff has had ample opportunity to take discovery on this issue but did not do so.

Even if Plaintiff had identified admissible evidence to support this speculative theory, it would not be a basis to deny summary judgment.  Plaintiff admitted during his deposition that he has "no basis to assert that the officers that were in communication with [Officer Wood-Thomas] ignored" the officer's "concerns."  Pl. Dep. at 80-81.  He further admitted that he had no basis to argue that the unidentified officers who received the communications "did not see a threat."  *Id.* at 81.  Plaintiff therefore has no basis to oppose summary judgment on this ground.

Further, to the extent that Plaintiff contends that Officer Wood-Thomas should have radioed the Metropolitan Police Department to advise them of Mr. Ebai's behavior, such a theory is meritless.  Officer Wood-Thomas was not able to directly radio the Metropolitan Police Department.  Officer Dep. at 19.

## III.   OFFICER WOOD-THOMAS' ACTIONS PREVENTED MORE SERIOUS PERSONAL INJURY.

Not only are Plaintiff's speculative negligence theories unsupported by evidence, but they fail to account for the actions taken by Officer Wood-Thomas to prevent more serious injuries, including potentially to Plaintiff himself.  The officer's decision to enter the eastbound lanes of Interstate 66 and follow a safe distance behind Mr. Ebai likely prevented a head-on collision between Mr. Ebai's and Mr. Konopka's vehicles.  This is because Mr. Konopka saw the police lights in the distance, slowed down, and drove more carefully.  As Mr. Konopka tells it:

> This awareness gave me an extra split-second to slow down and react when I saw the headlights of the oncoming car and enabled me to swerve just enough to avoid a more direct collision.  I unconditionally believe that those flashing lights allowed me to avoid a collision that would have caused more serious physical injuries to the occupants of both vehicles.

> I am thankful that the law enforcement officer . . . had decided to enter the highway with his lights activated and safely follow behind the vehicle that was driving westbound in the eastbound lanes.  His protective, cautionary actions alerted me that there was some kind of danger on the roadway and, as a result, I was able to slow down, swerve my vehicle, and avoid more serious injury.

Konopka Decl. ¶¶ 7-8.

In addition to these valiant efforts to warn other motorists, Officer Wood-Thomas rendered aid to Plaintiff while he was trapped in the front seat after the crash.  Plaintiff requested fire and emergency medical services to respond to the scene.  Officer Mem. at 3.  While waiting for the personnel to arrive, Officer Wood-Thomas observed that the vehicle in which Plaintiff was trapped had caught fire.  *Id.*  He used the fire extinguisher from his police cruiser to put out

29

the flames just as Plaintiff was being removed.  *Id.*  Officer Wood-Thomas then retrieved a first aid kit from the cruiser and attempted to give oxygen to Plaintiff, but Plaintiff refused.  *Id.*

Far from negligent, Officer Wood-Thomas' actions on the morning of July 8, 2018, were heroic.  The undisputed facts demonstrate that he acted reasonably and responsibly under the circumstances, placing his safety at risk to warn others of a potential danger.  After the crash, he rendered aid to Plaintiff, a fact that Plaintiff does not even mention in this lawsuit accusing the officer of negligence.  Moreover, Mr. Ebai takes full responsibility for the collision with Mr. Konopka's car and believes that Officer Wood-Thomas is blameless for the crash and did nothing wrong on the morning of July 8, 2018.  Ebai Dep. at 29-30 ("The officer was simply doing his job to protect the community.").

Because Plaintiff has advanced no plausible, evidence-based theory of negligence, and because the undisputed facts demonstrate that Officer Wood-Thomas acted reasonably and consistent with agency policy, the United States is entitled to summary judgment.

*      *      *

## CONCLUSION

For the reasons discussed above, the Court should grant this motion and enter summary judgment in favor of Defendant.

Dated:  May 30, 2022                    Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar #481052
                                        United States Attorney

                                        BRIAN P. HUDAK
                                        Chief, Civil Division

                                        By:    /s/ *Paul Cirino*
                                        PAUL CIRINO, D.C. Bar #1684555
                                        Assistant United States Attorney
                                        601 D Street, N.W.
                                        Washington, D.C.  20530
                                        Telephone: (202) 252-2529
                                        paul.cirino@usdoj.gov

                                        *Attorneys for Defendant*